**UNITED STATES OF AMERICA,**
Plaintiff–Appellee,

v.

**Juan Salvador CASTILLO,**
Defendant–Appellant.

No. 00–50385.
D.C. No. CR–99–03101–HBT.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2001.

Decided Dec. 28, 2001.

Before HUG, DUHÉ,* and TALLMAN, Circuit Judges.

## MEMORANDUM **

Juan Salvador Castillo ("Castillo") appeals his conviction under 8 U.S.C. § 1326 for being a deported alien found in the United States improperly, arguing that his underlying deportation was invalid. Because Castillo has not exhausted his administrative remedies pursuant to 8 U.S.C. § 1326(d)(1) and this Circuit's interpretation thereof in *United States v. Alvarado–Delgado,* 98 F.3d 492 (9th Cir.1996), we conclude that he is not entitled to collaterally attack his deportation in court and therefore AFFIRM Castillo's conviction.

## BACKGROUND

Castillo, a citizen of Mexico, was accorded lawful permanent resident status in 1986. In 1995, he pled guilty to assault with a deadly weapon and was sentenced to three years imprisonment. Because his three-year sentence did not render his offense an "aggravated felony" under then-existing federal immigration law, Castillo

was not deportable at the time of his plea. 8 U.S.C. § 1101(a)(43)(F) (1995). Nevertheless, in his plea agreement, Castillo acknowledged that his plea could result in deportation.

In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (codified in relevant part at 8 U.S.C. § 1182 (1996)). Section 440(d) of AEDPA rendered aliens convicted of aggravated felonies, regardless of the length of their sentence, ineligible for discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act ("INA").[1] This change had no effect on Castillo, because his offense did not qualify as an aggravated felony for which he could be deported. In September 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (codified in relevant part at 8 U.S.C. §§ 1101, 1182, 1224, 1229, 1230, and 1252 (1996)). Section 321 of IIRIRA reduced the sentence required to trigger "aggravated felony" status for a crime of violence from five years to one year imprisonment. *See* 8 U.S.C. § 1101(a)(43)(F) (1996). This made Castillo's offense an aggravated felony. Moreover, § 304 of IIRIRA repealed § 212(c) relief entirely, replacing it with a procedure called "cancellation of removal." *See* 8 U.S.C. § 1229b (1996). Consistent with AEDPA, § 304 of IIRIRA provided that cancellation of removal is not available to an alien convicted of any aggravated felony. *See* 8 U.S.C. § 1229b(a) (1996).

---

* Honorable John M. Duhé Jr., Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Under prior law, an aggravated felon was eligible for such discretionary relief if he served a term of imprisonment less than five years. *See* 8 U.S.C. § 1182(c) (1995).

In 1998, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Castillo on the basis that he had been convicted of an aggravated felony. The Immigration Judge ("IJ") determined that Castillo was deportable and not entitled to any form of relief. She asked Castillo whether he desired to exercise his right to appeal her decision. The record indicates that Castillo's answer was indiscernible; however, the IJ entered a final order of deportation which indicated that Castillo had waived any appeal. He was then deported to Mexico.

In 1999, Castillo was found in the United States and was indicted for violating 8 U.S.C. § 1326.[2] Castillo moved to dismiss the indictment in the district court on the grounds that AEDPA and IIRIRA had been improperly and retroactively applied to him at his deportation hearing. The court held an evidentiary hearing where Castillo testified that in 1995, his lawyer told him he would not be deported as a result of his guilty plea. He also testified that he relied on the availability of § 212(c) relief when he pled guilty. The district court denied Castillo's motion, finding he had waived his right to appeal the deportation, and that because he acknowledged in 1995 that his plea could result in his deportation, he could not have relied on the availability of § 212(c) relief. Castillo then entered a conditional guilty plea on the § 1326 charge and was convicted and sentenced.

Castillo now appeals his conviction. He argues that his § 1326 conviction cannot stand because it was based on an unlawful deportation, because in his deportation hearing the IJ improperly applied AEDPA and IIRIRA retroactively to deny him § 212(c) discretionary relief.

## DISCUSSION

■ We begin with the threshold issue whether Castillo is entitled to collaterally attack his deportation. This Court reviews *de novo* a district court's order denying a collateral attack on a deportation proceeding. *See United States v. Proa-Tovar*, 975 F.2d 592, 594 (9th Cir.1992). We review the district court's findings of fact, however, for clear error. *See United States v. Hinojosa–Perez*, 206 F.3d 832, 835 (9th Cir.2000).

■ The Supreme Court stated in *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–39, 107 S.Ct. 2148, 2154–56, 95 L.Ed.2d 772 (1987), that an alien must be afforded the opportunity to attack his deportation collaterally when it constitutes an element of the criminal offense. Accordingly, 8 U.S.C. § 1326(d) permits a collateral attack if (1) the alien exhausted his administrative remedies to seek relief against the deportation order, (2) the deportation proceedings deprived the alien of judicial review, and (3) the order was fundamentally unfair. The Ninth Circuit has interpreted this statute to permit a collateral attack if (1) the underlying proceeding was so procedurally flawed that it eliminated the alien's right to judicial review of the deportation order, and (2) the defendant was prejudiced by the error. *See United States v. Alvarado–Delgado*, 98 F.3d 492, 493 (9th Cir.1996). To meet the burden of proving prejudice, a defendant "must demonstrate that he had plausible grounds for

---

**2.** Any alien who "(1) has been ... deported ..., and thereafter (2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined ... or imprisoned ... or both." 8 U.S.C. § 1326 (1999).

relief from deportation." *United States v. Esparza–Ponce*, 193 F.3d 1133, 1136 (9th Cir.1999), *cert. denied,* 531 U.S. 842, 121 S.Ct. 107, 148 L.Ed.2d 64 (2000).

■ In *United States v. Estrada–Torres*, 179 F.3d 776 (9th Cir.1999), *cert. denied,* 531 U.S. 864, 121 S.Ct. 156, 148 L.Ed.2d 104 (2000), *overruled on other grounds by United States v. Rivera–Sanchez,* 247 F.3d 905 (9th Cir.2001), a panel of this circuit held that an alien who knowingly waived his right to appeal in the administrative proceeding could not later collaterally attack his deportation. *See* 179 F.3d at 781. The Government bears the burden of proving a considered and intelligent waiver. *See United States v. Lopez–Vasquez,* 1 F.3d 751, 753–54 (9th Cir.1993).

■ The Government argues that Castillo failed to exhaust his administrative remedies because (1) he waived his right to appeal his deportation, and (2) even if he did not waive his rights, he simply failed to appeal to the Board of Immigration Appeals ("BIA"). As proof, it urges us to consider the IJ's final order indicating Castillo had waived any appeal and the lack of evidence that Castillo exercised his right. The district court judge found that Castillo had, in fact, waived his appeal right. The court noted that Castillo spoke English well and understood the proceedings. The judge also was persuaded that because of the way the IJ handled the proceedings after she asked Castillo whether he desired to waive his appeal

right, he had obviously answered in the affirmative. This finding of fact is not clearly erroneous. Therefore, we cannot overturn it.[3]

■ Castillo also asserts that his failure to appeal should not bar his collateral attack because any appeal would have been futile.[4] He justifies this conclusion because (1) some of his claims are constitutional, and the BIA has no jurisdiction to decide such questions, *see Liu v. Waters,* 55 F.3d 421, 426 (9th Cir.1995); and (2) his claims about the temporal effect of AEDPA and IIRIRA were foreclosed by the Attorney General's 1997 opinion that § 440(d) of AEDPA should be applied retroactively to all deportation proceedings pending on April 24, 1996, *See In re Soriano,* 21 I. & N. Dec. 516, Int. Dec. 3289, 1996 WL 426888, Atty. Gen. Op., Feb. 21, 1997.

Castillo is correct that the BIA could not have considered his due process claims, but the issue is not as clear with respect to his statutory claims. In *Landgraf v. USI Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 1499–1500, 128 L.Ed.2d 229, the Supreme Court affirmed the general presumption against the retroactivity of laws. There, the Court formulated a test for determining the temporal effect of a federal statute enacted after the events in a suit. If "Congress has expressly prescribed the statute's proper reach," then courts must follow that command. *Id.* at 280, 114 S.Ct. at 1505. If, however, Congress has not expressed its intent about

---

**3.** Castillo urges us to hold that his waiver was not considered and intelligent because the IJ told him he was not entitled to relief from deportation. However, the "considered and intelligent" standard requires only that the IJ inform the alien of his right to appeal, explain it, and ask him whether he desires to exercise

that right, all of which she did in this case. *See Estrada–Torres,* 179 F.3d at 781.

**4.** An alien need not exhaust his administrative remedies if such an act would be futile. *See Leorna v. United States Dep't of State,* 105 F.3d 548, 552 (9th Cir.1997).

the retroactivity of a statute, a court must determine whether the law would have an impermissible retroactive effect. A statute has such an impermissible effect when it impairs the rights a party possessed when he acted, increases his liability for past conduct, or imposes new duties with respect to transactions already completed. *Id.*

Applying this test, the Attorney General reasoned in *Soriano* that Congress had not explicitly stated whether § 440(d) of AEDPA should be applied to pending deportation proceedings. *In re Soriano* at 535. She then concluded that because, in part, a discretionary waiver of deportation amounted to prospective relief similar to injunctive relief, the application of AEDPA's bar to such relief had no retroactive effect. Therefore, the presumption against retroactivity should not apply. *Id.* at 536. The Attorney General's opinion did not address the temporal effect of IIRIRA, however. Castillo asserts that because the opinion forecloses relief to persons better situated than him, i.e. aliens whose cases were already pending when AEDPA became effective, it was very likely he would have lost on his own claims.

Castillo has not demonstrated that an appeal of his statutory claims to the BIA would have been futile. First, as Castillo acknowledges, he and Soriano are not similarly situated. The Attorney General in *Soriano* determined that § 440(d) of AEDPA does apply to proceedings in which an application for relief under § 212(c) was pending when AEDPA was signed into law, after engaging in a full *Landgraf* analysis. She made no determination as to whether it applies to proceedings commenced after AEDPA's effective date, such as Castillo's. Castillo could have brought his *Landgraf* claims to the BIA for determination on this point.

Second, and more important, it is IIRIRA and not AEDPA that affects Castillo. He was made deportable not by AEDPA, but by the amendment of the definition of "aggravated felony" contained in § 321 of IIRIRA. Nowhere in the Attorney General's *Soriano* opinion is there a *Landgraf* analysis of IIRIRA. An appeal to the BIA on the IIRIRA issue would not have been futile, as it was not addressed by the Attorney General's opinion.

## CONCLUSION

Because Castillo waived his right to appeal his deportation, and did not demonstrate that any such appeal would have been futile, he has failed to exhaust his administrative remedies as required by 8 U.S.C. § 1326(d). We therefore AFFIRM.

